# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**KENNETH E. STAGER,**

      **Plaintiff,**

          **v.**

**JEREMY HANSHAW, et al.,**

      **Defendants.**

**Case No. 1:24-cv-99**

**JUDGE DOUGLAS R. COLE**

## OPINION AND ORDER

Plaintiff Kenneth Stager (Stager) is the father of Zander Stager (Zander). That matters because, on February 28, 2022, Lawrence County Sheriff's Deputy Jeremy Hanshaw arrested Zander, who was then a high-school student, and charged him with Obstructing Official Business and (in a charge added the next day) Resisting Arrest. *Stager v. Hanshaw*, No. 1:23-cv-120, 2024 WL 1556708, at *1 (S.D. Ohio Apr. 10, 2024) (*Stager I*). After the prosecutor entered a nolle prosequi on the charges, Zander responded by suing Hanshaw and Lawrence County Sheriff Jeff Lawless in federal court over the allegedly unconstitutional circumstances of the arrest and charges. *Id.* at *1–2; (*See also* Compl., *Stager I*, 1:23-cv-120 (S.D. Ohio Feb. 27, 2024), Doc. 1). While Zander's case has since settled, (*see* 11/21/24 Not. Order, *Stager I*, 1:23-cv-120 (S.D. Ohio)), Stager has not yet resolved this related suit that he initiated against Hanshaw, Lawless, and the Lawrence County Board of Commissioners (the Board). (Compl., Doc. 1, #1).

Stager's present suit arises out of his earlier efforts at a different form of dispute resolution. Specifically, the day of his son's arrest, he went to the county jail and confronted Hanshaw. (*Id.* at #4). Eleven days later, the Lawrence County prosecutor charged Stager with Aggravated Menacing, based on an affidavit Hanshaw executed in which he averred that the confrontation put him in fear of serious physical harm. (*Id.*). Like son, like father—Stager's criminal case ended with a nolle prosequi, and he responded with this civil action, principally asserting various individual and official-capacity claims under 42 U.S.C. § 1983. (*See id.* at #5–8).

The matter is now before the Court on Defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Doc. 13). For many of the same reasons as in *Stager I*, the Court **GRANTS IN PART** Defendants' Motion for Judgment on the Pleadings (Doc. 13), but finds that Count I may proceed against Defendants Hanshaw and Lawless in their individual capacities.

### BACKGROUND[1]

The alleged facts here are straightforward. On February 28, 2022, Hanshaw purportedly assaulted Stager's son, Zander.[2] (Doc. 1, #4). Later that day, Stager went to the Lawrence County jail to "discuss the matter" with Hanshaw. (*Id.*). On March

---

[1] This matter is before the Court on a Rule 12(c) motion for judgment on the pleadings. For purposes of such a motion, the Court accepts Plaintiff's well-pleaded factual allegations as true. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). Accordingly, the Court relies on Stager's allegations in describing the background, but with the caveat that they are only allegations at this stage.

[2] As stated in Stager's Complaint, "The factual allegations of that assault are more fully set forth in [*Stager I*]." (Doc. 1, #4). Despite the reference, Stager's Complaint does not purport to incorporate the factual allegations of the complaint in *Stager I*.

11, 2022, "[a]s a result of Mr. Stager expressing his concerns," Hanshaw executed a criminal complaint against Stager for Aggravated Menacing, in violation of Ohio Revised Code § 2903.21. (*Id.*). But several months later, on October 20, 2022, the prosecutor resolved that criminal charge through entry of a nolle prosequi—a procedural mechanism by which a prosecutor formally informs the court that he is dismissing a criminal case because the prosecutor no longer wishes to pursue the criminal charges at issue. (*Id.* at #5).

Beyond that, Stager also alleges certain background facts regarding the Defendants. For example, Stager alleges that Hanshaw, while an employee of Lawrence County, "was indicted by a federal grand jury for violating the civil rights of an inmate at the Lawrence County Jail in 2014." (*Id.* at #3–4). As a result of that incident, Hanshaw was suspended without pay "for violating the policies and procedures of the Lawrence County Sheriff's Office." (*Id.* at #4). But despite that suspension, Hanshaw was "re-employed" after he was acquitted of those charges. (*Id.*). Stager says that wasn't Hanshaw's only incident though. There were apparently "numerous complaints" against him "for violating civil rights" that went unpunished. (*Id.*). And even though Lawless and the Board knew about Hanshaw's transgressions, Stager complains that they gave him multiple promotions rather than reprimands. (*Id.*).

Based on these facts, Stager brings a four-count Complaint. The first three claims arise under 42 U.S.C. § 1983; the final claim for civil conspiracy arises under Ohio law. (*Id.* at #5–8). At the outset, Stager makes clear that he is suing both

3

Hanshaw and Lawless in both their individual and official capacities. (*Id.* at #3). Spelling out Stager's claims more fully, in Count I, which he asserts against Hanshaw, Lawless, and the Board, Stager alleges that the Defendants restrained his freedom of speech in violation of the First and/or Fourteenth Amendments.[3] (*Id.* at #5–6). In Count II, asserted against Lawless and the Board, Stager raises a claim for failure to hire, train, and supervise, and for customs, policies, and practices causing violations of the Fourth Amendment. (*Id.* at #6–7). His theory is that these Defendants, as county policymakers, are responsible for the constitutional violations Hanshaw, who is a county employee, allegedly committed (as more fully set forth in Count III). (*Id.*). Then, in Count III, which Stager directs at Hanshaw and Lawless, Stager alleges malicious prosecution, in violation of the Fourth Amendment. (*Id.* at #7–8). Finally, in Count IV, Stager claims that Hanshaw and Lawless engaged in a civil conspiracy to violate his constitutional rights through the filing of a false criminal complaint. (*Id.* at #8).

---

[3] Technically, because these are state actors, the First Amendment claim is really a Fourteenth Amendment claim, in that the Fourteenth Amendment incorporates the First Amendment and applies it against the States. *Gitlow v. People of State of New York*, 268 U.S. 652, 666 (1925) ("[F]reedom of speech and of the press … are among the fundamental personal rights and 'liberties' protected by the due process clause of the Fourteenth Amendment from impairment by the States."). The same is true as to the Fourth Amendment claims discussed in Counts II and III. *See Mapp v. Ohio*, 367 U.S. 643, 650–51 (1961) (recognizing that the Fourth Amendment's protection against unreasonable searches and seizures was incorporated against the states in *Wolf v. Colorado*, 338 U.S. 25 (1949)). In its decision here, though, the Court will refer to the claims as arising under the original-source Amendments.

After Stager initiated this case, Zander settled his claims against Hanshaw and Lawless in *Stager I*.[4] (*See* 11/21/24 Not. Order, *Stager I*, 1:23-cv-120 (S.D. Ohio). In a recent telephone conference with the Court, the parties indicated that, notwithstanding the settlement in *Stager I*, the Court's ruling on the instant motion would aid the resolution of this case. After answering the Complaint, Defendants moved for judgment on the pleadings. (Doc. 13). Stager responded, (Doc. 14), and Defendants replied, (Doc. 15), so the matter is ripe.

## LEGAL STANDARD

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) "is appropriately granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008) (cleaned up). To make that determination, the Court applies the same standards applicable to resolving motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Id.*

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "sufficient factual matter ... to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). While a "plausible" claim for relief does

---

[4] But not before the Court weighed in on the Defendants' motion for partial dismissal of Zander's claims. *See Stager I*, No. 1:23-cv-120, 2024 WL 1556708 (S.D. Ohio Apr. 10, 2024). As such, while the Court is not here bound by the law of that case nor any precedential force of its opinion in *Stager I*, it is mindful of the extent to which the cases share substantial commonality, in terms of the parties, facts, interests, procedural posture, and respective counsel (which also accounts for the arguments and theories in common between the cases). The Court is not simply retracing its steps from that distinctly separate case, but neither does it seek to forge a new path across familiar territory.

not require a showing of probable liability, it requires more than "a sheer possibility that a defendant has acted unlawfully." *Id.* The complaint must allege sufficient facts to allow the Court "to draw the reasonable inference that the defendant is liable." *Id.* In other words, a plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2)).

To meet this pleading standard, a complaint must contain "either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275–76 (6th Cir. 2010) (citation omitted). And "conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id.* at 276 (citation omitted). In short, an action will be dismissed where "there is no law to support the claims made" or "the facts alleged are insufficient to state a claim." *Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, 967 F. Supp. 2d 1164, 1169 (S.D. Ohio 2013).

"In reviewing a motion to dismiss, [the Court] construe[s] the complaint in the light most favorable to the plaintiff, draw[s] all reasonable inferences in its favor, and accept[s] all well-pleaded allegations in the complaint as true." *Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 310 (6th Cir. 2021). But that does not mean the Court must take everything plaintiffs allege at face value, no matter how unsupported. The Court may disregard "naked assertions" of fact or "formulaic recitations of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (cleaned up). And it has limited scope to consider materials outside the pleadings. *Elec. Merch. Sys.*

6

*LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023) ("Generally, in considering a motion to dismiss, the district court is confined to considering only the pleadings .... However, the court may, in undertaking a 12(b)(6) analysis, take judicial notice of matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." (cleaned up)); *see also Dudek v. Thomas & Thomas Att'ys & Couns. At L. , LLC*, 702 F. Supp. 2d 826, 832 (N.D. Ohio 2010 ("In ruling on a Rule 12(c) motion, the court … can also consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion for judgment on the pleadings that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice.").

## LAW AND ANALYSIS

Defendants first argue that all of Stager's official-capacity claims against them fall short of the pleading standard for such claims as set forth in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). (Doc. 13, #49–57). As for the individual-capacity claims Stager asserts against Hanshaw and Lawless,[5] Defendants offer various grounds for dismissal. Regarding the First Amendment claim, they argue that Stager's speech was unprotected speech consisting of true threats. (*Id.* at #58–59). Likewise, they argue Stager's malicious-prosecution claim fails because Stager does not allege a deprivation of liberty. (*Id.* at #62–63). Finally, Defendants argue that

---

[5] That is, in the individual-capacity portions of Counts I, III, and IV the Court infers based on Stager's general statement that he is suing Hanshaw and Lawless in their "individual and official capacities." (Doc. 1, #3). As for Count II, which asserts a *Monell* claim (against Lawless and the Board), it is cognizable against defendants only in their official capacities.

Stager's state-law civil-conspiracy claim is misplaced for multiple reasons: (i) the intra-corporate conspiracy doctrine bars such claims; (ii) Defendants have statutory immunity from any such claim sounding in state law; and (iii) regardless, this claim requires an underlying tort, and so fails once the Court dismisses the other counts—the only potential sources Stager identified for the requisite underlying tort. (*Id.* at #63–66). Alternatively, Defendants invoke qualified immunity and claim it protects them against all of Stager's individual-capacity § 1983 claims.

## A.  Stager's Official-Capacity § 1983 Claims Fail Because He Has Not Plausibly Alleged an Actionable Policy or Custom.

Defendants argue that Stager has failed to adequately plead claims against the Defendants in their official capacities.[6] (*Id.* at #49–57). While the operative facts in this case differ (somewhat) from *Stager I*, the Court considered very similar arguments regarding the official-capacity claims there. *See* 2024 WL 1556708 at *4–7. As such, while the Court proceeds to analyze the parties' arguments anew, some of what follows will be familiar to anyone who tuned in to the previous episode.

### 1.  The Legal Standard

"[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Accordingly, "[a] suit against an individual in his official capacity is the equivalent of a suit against [that] governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing *Will v. Mich. Dep't of*

---

[6] The phrase "the Defendants in their official capacities" includes the Board, which is a party in *only* an official capacity.

*State Police*, 491 U.S. 58, 68 (1989)). Any claim against either Hanshaw or Lawless in their official capacities, then, is the equivalent of suing the Board—the governmental entity that employs them.

A viable § 1983 claim against a governmental entity must allege (1) a constitutional violation, which (2) was directly caused by a municipal[7] policy or custom. *Hardrick v. City of Detroit*, 876 F.3d 238, 243 (6th Cir. 2017). As to the latter, "[t]here are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). A plaintiff may prove that a defendant has an actionable, unconstitutional "policy" or "custom" in place by demonstrating: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision[-]making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas*, 398 F.3d at 429).

The problem for Stager is that he has not plausibly alleged an actionable policy or custom under any of the four avenues described above, nor has he pointed to any other avenue that may suffice in their stead. To show why that is so, the Court takes the four in the order addressed in Defendants' motion.

---

[7] Here, the entity is actually a county, not a municipality, but the underlying point remains the same. And, as courts typically speak in terms of "municipal liability" in connection with § 1983 actions directed against sub-State level governmental entities, the Court will use that convention here.

### a. Official Policy

Consider first whether Stager has alleged that an illegal, official policy exists. To survive a motion to dismiss based on that theory, he needs to "allege facts that point towards a policy or custom that forms the basis of [his] claim." *Ghaster v. City of Rocky River*, No. 1:09-cv-2080, 2010 WL 2802682, at *7 (N.D. Ohio July 13, 2010); *see also Austin v. City of Cincinnati*, No. 1:15-cv-608, 2016 WL 1718264, at *2 (S.D. Ohio Apr. 28, 2016) ("[T]he Complaint itself is devoid of any factual enhancement that would allow the Court to reasonabl[y] infer the existence of an alleged policy that caused any particular constitutional violation.").

But the Complaint cites no facts suggesting that a specific, official policy of the Lawrence County Sheriff's Department (or the Board more generally) led to Stager's injuries. Rather, Stager simply alleges that Lawless "implemented customs and policies for training and supervision of Lawrence County deputies on the institution of criminal complaints, that, on their face, violate the Fourth Amendment." (Doc. 1, #7). That admittedly sounds bad. But, as in *Stager I*, the problem is that the Complaint here offers only vague and conclusory allusions to such "customs" and "policies."[8] That is not enough. Indeed, the Supreme Court has instructed that the Court should disregard "formulaic recitations of the elements of a cause of action" in

---

[8] The Court reached the same conclusion regarding the pleading in *Stager I*, in which it found the following language to be only vague and conclusory: "As a direct and proximate result of the customs, policies, and practices described herein and permitted by Defendant Lawless, which violate the Fourth Amendment on their face, or otherwise are applied in a manner such that Fourth Amendment violations are likely to occur." 2024 WL 1556708 at *4. The reference to "the institution of criminal complaints" in the instant pleadings makes this only slightly less vague than the analogous pleading in *Stager I*, though it still comes up short of identifying a specific policy and remains entirely conclusory.

assessing plausibility. *Iqbal*, 556 U.S. at 678. Yet that is all that Stager offers here. As a result, he has failed to plausibly allege an official policy, and thus he cannot rely on that avenue as the basis for alleging his official-capacity § 1983 claims.

### b. Inadequate Training or Supervision

That brings the Court to the second avenue: "the existence of a policy of inadequate training or supervision." *Burgess*, 735 F.3d at 478. "A failure-to-train claim … requires a showing of prior instances of unconstitutional conduct demonstrating that the municipality had ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Id.* (cleaned up). Stager's problem here is that he again fails to allege *facts* giving rise to a reasonable inference that Defendants were on notice concerning deficient training or supervision. So, his claim falls short on this front, too.

Stager's pleading points to Hanshaw's 2014 indictment for civil rights violations and the "multiple complaints" that followed. (Doc. 1, #4, 6). And he further alleges that, against that backdrop, Lawless and Lawrence County "re-employed," and "continued to employ" Hanshaw, despite becoming aware of such complaints. (*Id.*).

These allegations fall short for three reasons. First, Stager's allegation about "multiple complaints" levied against Hanshaw is too vague. "[W]ithout more, vague allegations that previous cases are like this case in some unspecified way(s) are simply not enough to show a pattern of unconstitutional conduct that ought to have put Defendants on notice." *Dillon v. Hamlin*, 718 F. Supp. 3d 733, 741 (S.D. Ohio

11

2024); *see also Assi v. Hanshaw*, 625 F. Supp. 3d 722, 751 (S.D. Ohio 2022) ("[Plaintiff's] allegations that there had been previous lawsuits regarding unconstitutional conduct at the [county jail] are vague—failing to provide specifics as to the nature of the alleged unconstitutional conduct (aside from the fact that one suit against Hanshaw alleged excessive force) and the outcome of those lawsuits."). Previous *complaints*, standing alone, don't work either. *See Stanfield v. City of Lima*, 727 F. App'x 841, 852 (6th Cir. 2018) ("The mere existence of complaints, without more, is not sufficient evidence to allow a reasonable jury to find the existence of a clear and persistent pattern of illegal activity."). Rather the question is whether Hanshaw in fact *engaged in* misconduct that Lawless and the Board overlooked. Then, further highlighting the vagueness problem, even as to the alleged complaints, Stager "fail[s] to cite to any specific internal complaints filed against [Hanshaw], and say[s] nothing of how those internal complaints were resolved." *Laning v. Doyle*, No. 3:14-cv-24, 2015 WL 710427, at *11 (S.D. Ohio Feb. 18, 2015). In short, Stager's passing reference to "multiple complaints" does not cut it.

Second, even though Stager's allegation about Hanshaw's previous criminal charge in 2014 is more specific, it shows—at most[9]—a single instance of unconstitutional conduct of which the Board was, or should have been, aware. But one prior instance does not constitute a history of rights violations. *See Assi*, 625 F. Supp. 3d at 750 ("[T]he Sixth Circuit has emphasized that there must have been a

---

[9] Keeping in mind that Hanshaw was acquitted of the criminal charge, the Court still assumes, for the purposes of this motion, that Hanshaw's 2014 indictment provided some notice to the Board of problematic conduct, as evinced by the suspension related to the same. (*See* Doc. 1, #4).

sufficient number of prior incidents of a sufficiently similar type of misconduct to demonstrate that a municipal entity was on notice or constructive notice."). History, for these purposes, "implies repetition, not a one-off instance." *Dillon*, 2024 WL 707289, at \*7.

Lastly, "[i]t is well-settled that a plaintiff must do more than prove that a single officer was improperly trained or out of control, even if the [Board] had been aware of past complaints against that particular officer." *Maruschak v. City of Cleveland*, No. 1:09-cv-1680, 2010 WL 2232669, at \*5 (N.D. Ohio May 28, 2010) (quotation omitted). In other words, even if Stager's Complaint plausibly alleged that Hanshaw was poorly trained, that would not be enough to meet his pleading burden under *Monell*.

Stager has therefore failed to establish official-capacity liability for his § 1983 claims based on an inadequate training or supervision theory.

### c. Inaction

Defendants next argue that Stager's Complaint also fails to plausibly allege a custom of tolerance for or acquiescence in federal rights violations. Courts often refer to this as the "inaction theory," under which a policy of tolerating federal rights violations "is unwritten but nevertheless entrenched." *Thomas*, 398 F.3d at 429. To succeed here, Stager must show four elements: (1) "a clear and persistent pattern" of rights violations; (2) "notice or constructive notice on the part of the defendant"; (3) Defendants' "tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy

13

of inaction"; and (4) a causal link between the custom and the constitutional deprivation. *Thomas*, 398 F.3d at 429 (quoting *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996)). While inaction-theory claims differ in some ways from failure-to-train claims, the first two elements required under an inaction theory are substantially similar to the showing required under a failure-to-train theory. Most importantly, for present purposes, under either theory Stager was required to allege (1) a history of rights violations such that (2) the defendants were on notice. *See Assi*, 625 F. Supp. 3d at 750.

As a result of those similarities, Stager cannot prevail on an inaction theory either. He simply has not plausibly alleged a clear pattern of rights violations or that Defendants had notice sufficient to satisfy the pleading standard. So, his official-capacity § 1983 claims can't hang their hat on an inaction theory either.

### d. Ratification

Finally, Stager's Complaint also falls short in plausibly alleging a ratification theory. There are two methods for finding ratification: "(1) when an individual with policymaking authority issues a final decision affirming a subordinate's decision[,] … thereby adopting it as municipal policy, … and (2) when a policymaker fails to meaningfully investigate the acts of a subordinate." *Meyers v. Cincinnati Bd. of Educ.*, 343 F. Supp. 3d 714, 729 (S.D. Ohio 2018); *see also Wright v. City of Euclid*, 962 F.3d 852, 882 (6th Cir. 2020) ("A plaintiff can establish municipal liability by showing that the municipality ratifies the unconstitutional acts of its employees by failing to meaningfully investigate and punish allegations of unconstitutional

14

conduct."); *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993) ("Ratification of a subordinate's action requires more than acquiescence—it requires affirmative approval of a particular decision made by a subordinate.").

Stager has not alleged facts suggesting that Lawless or the Board ratified Hanshaw's conduct either by affirming it or by failing to investigate. True, Stager alleges Lawless "ratified Defendant Hanshaw and the conduct described herein by allowing him to swear out an improper criminal complaint against Mr. Stager without authority to do so." (Doc. 1, #6). But "allowing" sounds a lot like acquiescing. That is, Stager's Complaint does not describe any "affirmative approval" that Lawless provided, as would be needed to establish ratification. *Feliciano*, 988 F.2d at 656.

Neither do the facts alleged in the Complaint suffice to establish the failure-to-investigate method of ratification. Stager alleges that Hanshaw was federally indicted in 2014 "for violating the civil rights of an inmate at the Lawrence County Jail." (Doc. 1, #3). Due to the same 2014 incident, Hanshaw was suspended without pay "for violating the policies and procedures of the Lawrence County Sheriff's Office." (*Id.* at #4). However, he was "re-employed" after he was acquitted *because*, according to the Complaint, Lawless concluded that Hanshaw's acquittal "required me to return [him] to [his] duties." (*Id.*). On balance, rather than showing that Lawless "fail[ed] to meaningfully investigate and punish" Hanshaw, these allegations suggest that Lawless *did* punish Hanshaw for violating policy—by suspending him without pay—and that Hanshaw's return to duty was not a discretionary choice by Lawless. *Wright*, 962 F.3d at 882.

Stager further alleges that "in the years following that incident, there continued to be numerous complaints against Defendant Hanshaw for violating civil rights." (Doc. 1, #4). But as noted above, Stager does not identify the substance or nature of any such complaints, nor does he allege that Lawless failed to investigate them.[10] True, he alleges that Hanshaw "was not reprimanded" by Lawless or Lawrence County "for violating civil rights." (*Id.*). But at the risk of undue repetition, complaints (which after all can be baseless) do not necessarily warrant a reprimand, and Stager's pleading—which makes no reference to anything substantiating any wrongdoing underlying the "numerous complaints," (*id.*)—already discusses the disciplinary suspension imposed on Hanshaw in 2014. *See Stanfield*, 727 F. App'x at 852. In sum, to the extent Stager alleges facts relating to Hanshaw's prior misconduct with any specificity or substantiation (i.e., the 2014 indictment), the allegations also show that he was reprimanded for that conduct. Against that backdrop, Stager's vague allegation of "numerous complaints" against Hanshaw without a reprimand does not plausibly allege official-capacity liability on a ratification theory.

\*     \*     \*

In short, Stager's only allegations in any way tying the events that allegedly occurred here to Hanshaw's supervisor (Lawless) or the Board are vague and conclusory. Accordingly, Stager's official-capacity § 1983 claims fail. *See Terry*, 604 F.3d at 275–76. So the Court grants Defendants' motion as to all of Stager's § 1983

---

[10] Neither is it alleged that Lawless *did* investigate the complaints, but Stager's purposes require that he establish a lack of investigation. *Wright*, 962 F.3d at 882.

claims (Counts I, II, and III) to the extent that he asserts them against the Board, or Hanshaw or Lawless in their official capacities.[11]

## B. The Freedom-of-Speech Claim against Individual-Capacity Defendants May Proceed.

Separately, Defendants argue that Stager has failed to state a colorable First Amendment claim because Stager's speech "constituted a 'true threat' and as a result, is not protected under the First Amendment." (Doc. 13, #59). But Defendants' argument in this regard simply flags a factual dispute that the Court cannot resolve at the pleading stage.

First Amendment retaliation claims require three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). As to the first element, the Defendants are correct that the boundaries of protected conduct do not include true threats. *Watts v. United States*, 394 U.S. 705, 707 (1969) ("What is a threat must be distinguished from what is constitutionally protected speech.").

But whether Stager's speech here constituted a "true threat" is far from clear, and Defendants cannot rely on their own version of what Stager said as a basis for securing dismissal at this stage of the litigation. As noted above, Stager alleges that

---

[11] As noted above, *see supra* note 5, Count II, a claim for "Failure to Hire, Train, and Supervise, and for Customs, Policies, and Practices Causing Violations of the Fourth Amendment," does not include any cause of action against individual-capacity Defendants, and so its journey ends here.

he went to the station to "discuss the matter" (of his son's arrest) with Hanshaw, and that Hanshaw filed criminal charges against Stager due to Stager "expressing his concerns." (Doc. 1, #4). Admittedly, Defendants paint a different (and, for Stager, far more problematic) picture of the events that occurred, (Doc. 13, #59), citing the narrative statement from an "Incident Report" they attach to their Answer, (Doc. 12-1). That report describes Hanshaw as encountering "an irate male subject … identified as [Stager]." (Doc. 12-1, #39; Doc 13, #59).[12] It then goes on to relate that Stager allegedly asked Hanshaw, "Are you the one who laid hands on my son?" and then followed up with, "let's step outside to show you how it feels." (Doc. 12-1, #39).

Given the competing narratives about the relevant events, the Court simply cannot resolve at this stage the question of whether Stager's words amounted to a true threat. Therefore, the Court denies Defendants' motion as to Count I of the Complaint as it relates to Hanshaw in his individual capacity. As for this same claim against Lawless in his individual capacity, Defendants present no argument for judgment beyond their "true threat" theory. Furthermore, the Incident Report indicates that Lawless was directly involved with the charging decision, noting that "Lawless advised for [Hanshaw] to file charges with [Ironton Police Department],"

---

[12] For the purposes of the present motion, the Court can properly consider the Incident Report as part of the pleadings. *Dudek*, 702 F. Supp. 2d at 832; *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleadings for all purposes."); *Greenberg v. The Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) ("[A] document that is not formally incorporated by reference or attached to a complaint may still be considered … when [the document] is central to the plaintiff's claim").

following their discussion of the incident. (*Id.*). Therefore, the Court denies the motion as to Count I as it relates to the individual-capacity claim against Lawless as well.[13]

## C. But the Malicious-Prosecution Claim Cannot Proceed.

Defendants argue that Stager's individual-capacity claim for malicious prosecution against Hanshaw and Lawless fails because he has not alleged a deprivation of liberty sufficient to sustain such a claim. The Court agrees.

A § 1983 claim for malicious prosecution arises under the Fourth Amendment. *Barnes v. Wright*, 449 F.3d 709, 715 (6th Cir. 2006). To prevail, the claimant must show: (1) "that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute"; (2) "a lack of probable cause for the criminal prosecution"; (3) "a deprivation of liberty … apart from the initial seizure"; and (4) that "the criminal proceeding[s] [were] resolved in the plaintiff's favor." *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010) (cleaned up). "Such a claim requires that all four elements are met, so if a plaintiff fails to demonstrate even one element, then the claim must fail." *Knight v. Columbus Div. of Police*, No. 2:13-cv-1271, 2014 WL 4557639, at *2 (S.D. Ohio Sept. 12, 2014). That in

---

[13] The reason that Lawless's involvement here does not amount to "ratification" for the purposes of Stager's official-capacity claims boils down to the difference between a supervisor's individual liability and municipal liability. "[N]ot every decision by municipal officers automatically subjects the municipality to § 1983 liability." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). For present purposes, Lawless's "advis[ing]" Hanshaw to file charges is sufficient to preserve the individual-capacity claims, but, for reasons explained above, Stager's pleading lacks the necessary ingredients to show that such an action amounted to "establish[ing] binding county policy respecting particular matters." *Id.* at 482.

turn means that at the pleading stage, the plaintiff must allege facts creating a plausible inference as to each element.

Defendants focus their argument on the third element.[14] They argue that Stager failed to allege *any* deprivation of liberty—that is no initial seizure, much less a post-hoc one. (Doc. 13, #63–64 (citing *Sykes*, 625 F.3d at 309)). Stager's counter is that "Defendants believe that liability does not attach until a second detention." (Doc. 14, #79). But Defendants are correct that while Stager's "Response provides caselaw establishing what courts may consider as a deprivation of liberty … [his Complaint] does not allege any of th[ose] conditions were imposed upon Plaintiff." (Doc. 15, #89). Instead, Stager alleges only that he was deprived of "the right to be free from unwarranted prosecution," (Doc. 1, #8)—i.e., prosecution without probable cause. But the deprivation element would be superfluous if it were satisfied by the same lack of probable cause that the second element requires. True, Stager further alleges that he suffered "embarrassment and mental anguish" and "unnecessary attorney fees" due to the charges, (*id.*), but these damages do not amount to the constitutional deprivation of *liberty* that the Sixth Circuit has recognized as necessary for a malicious prosecution claim.

---

[14] Defendants also contend that probable cause existed, which would likewise vitiate Stager's malicious prosecution claim. (Doc. 13, #62) But the probable cause element turns on the same factual dispute which precludes judgment on the First Amendment claim—i.e., whether Stager's expression of concerns amounted to true threats. Probable cause determinations are traditionally the province of the court rather than the jury, but the Sixth Circuit has made clear that the "ultimate question of probable cause" is "separate from the determination of historical facts," and the court's answer to the former may be predicated on a factfinder's determination of the latter. *Gerics v. Trevino*, 974 F.3d 798, 804–06 (6th Cir. 2020) (emphasis omitted).

The Sixth Circuit's decision in *Noonan v. County of Oakland* is instructive. 683 F. App'x 455, 463 (6th Cir. 2017). In words equally applicable here, the Sixth Circuit observed that:

> Noonan was never arrested or incarcerated, required to post bail or bond, or subjected to any travel restrictions. In short, despite the aggravation, financial cost [including impoundment of his car for over 5 months], and personal humiliation that Noonan suffered as a result of these false charges, we must conclude as a matter of law that he did not suffer a deprivation of liberty as understood in our Fourth Amendment jurisprudence.

*Id.* For many of the same reasons, Stager's claimed deprivation falls well short. Generally speaking, defending oneself at trial—including the ordinary costs of doing so—does not amount to a constitutional deprivation of a liberty interest. *See Briner v. City of Ontario*, No. 1:07-cv-129, 2011 WL 866464, at *4 (N.D. Ohio Mar. 9, 2011) (finding no "deprivation of liberty" where plaintiff was forced to stand trial and "she was not arrested[, t]here was no bond required[,] and there [wa]s nothing in the record to suggest that she had any restrictions placed on her movements prior to trial"). And that is really all that Stager has alleged here.

Moreover, the cases Stager cites hurt, rather than help, his cause. In one case, for example, a plaintiff "was detained in jail for hours after booking and had to post bond." (Doc. 14, #79 (citing *Wright*, 962 F.3d at 876–77)). In another, the plaintiff "entered [a] pretrial release program, had to pay fines, and was required to meet with [a] case manager weekly." (*Id.* (citing *Miller v. Maddox*, 866 F.3d 386, 393 (6th Cir. 2017))). Had Stager alleged anything remotely comparable to those examples, that

21

may well have sufficed. But he did not. So, the Court grants Defendants' motion as to Count III.

## D.    The Civil Conspiracy Against Hanshaw and Lawless Also Fails.

Defendants offer three bases for dismissing Stager's final claim—that Hanshaw and Lawless conspired to violate Stager's civil rights.[15] First, that the intra-corporate conspiracy doctrine bars it. (Doc. 13, #63–64). Next, they invoke statutory immunity in their official capacities pursuant to Ohio Revised Code § 2744.02. (*Id.* at #64–65). Finally, they argue that Stager has failed to plead the requisite elements for civil conspiracy, namely by failing to plausibly allege an underlying tort. (*Id.* at #65–66). Because the Court agrees with Defendants' first argument it need not, and thus does not, reach the rest.

The intra-corporate conspiracy doctrine provides that "members of the same legal entity acting within the scope of their employment cannot form a conspiracy as two separate 'people.'" *Marvaso v. Sanchez*, 971 F.3d 599, 607 (6th Cir. 2020); *see also Ohio Vestibular & Balance Ctrs., Inc. v. Wheeler*, 999 N.E.2d 241, 251–52 (Ohio Ct. App. 2013) (discussing the application of intra-corporate conspiracy doctrine under Ohio law). That said, the doctrine does not apply "where the defendants were alleged to have been acting outside the scope of their employment." *Marvaso*, 971 F.3d at 607;

---

[15] Taking stock: to this point, the Court has determined that judgment is warranted for all Defendants on Counts II and III. As for Count I, judgment is warranted for Hanshaw and Lawless in their official capacities, *see supra* Part A, but not in their individual capacities because of an unresolvable (at this stage) dispute of fact, *see supra* Part B.

*see also Daudistel v. Vill. of Silverton*, 2014-Ohio-5731, ¶ 45 (1st Dist.) (noting this exception).

Stager attempts to overcome application of the doctrine here by arguing that it "does not … extend to [Hanshaw's and Lawless's actions] in their individual capacities." (Doc. 14, #80). But he provides no legal support for that argument. And Defendants provide authority that states otherwise. (Doc. 15, #90 (citing *Franklin v. Frid*, 7 F. Supp. 2d 920, 927 n.5 (W.D. Mich. 1998)). So, Stager's first argument fails to persuade.

Separately, while Stager does not expressly argue that Hanshaw or Lawless acted beyond the scope of their employment, he could not rely on that exception either. That's because, according to the Complaint, "at all relevant times herein" both Hanshaw and Lawless were "acting under color of law within the course and scope in furtherance of [their] employment." (Doc. 1, #3). And the mere fact that Stager has stated an intent to sue the Defendants in their individual capacities does not amount to a tacit assertion that overcomes his express pleading that they were acting within the scope of their employment. *See Jackson v. City of Columbus*, 194 F.3d 737, 753 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002) ("[plaintiff's] complaint contains no allegations that [defendants] were acting outside the scope of their employment, and simply suing an official in his individual capacity does not satisfy this requirement.").

In short, the intra-corporate conspiracy doctrine bars Stager's civil conspiracy claim.

23

## E.    The Court Will Assess Defendants' Qualified-Immunity Defense at a Later Stage.

Lastly, Hanshaw and Lawless argue qualified immunity shields them from any liability for any of the individual-capacity claims.[16] But the Court cannot adjudicate the qualified-immunity question at this early stage of the proceedings.

Qualified immunity shields government employees "from liability so long as the employee acted under the objectively reasonable belief that his or her actions were lawful." *Ahlers v. Schebil*, 188 F.3d 365, 372–73 (6th Cir. 1999). The inquiry involves two-steps (which the Court can address in either order): (1) whether the claimant has alleged facts describing the violation of a constitutional right, and (2) whether the right was "clearly established" at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)); *see also Hodges v. City of Grand Rapids*, 139 F.4th 495, 504 (6th Cir. 2025).

Such fact-based analysis is ill-suited to a thin record. Though the Supreme Court has described a desire for prompt resolution as the "driving force" behind the qualified-immunity doctrine, courts have recognized that factual development "beyond the allegations in a complaint" is often necessary to fully and properly address a claim of qualified immunity. *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 660–61 (6th Cir. 2021) (quotation omitted). That admonition rings true here.

Stager's allegations are sufficient to stave-off application of the qualified-immunity defense at this early juncture. He alleges that Hanshaw filed a "false"

---

[16] At this point, since all the other claims fail, the only claim to which a qualified-immunity defense might apply would be the First Amendment claim (Count I) against Hanshaw and Lawless.

criminal complaint, and that Lawless "was aware of the false criminal complaint and allowed it to go forward." (Doc. 1, #7).[17] In the Sixth Circuit, qualified immunity does not shield a state actor who knowingly falsifies statements material to the finding of probable cause. *See Gregory v. City of Louisville*, 444 F.3d 725, 758 (6th Cir. 2006) ("This Court has held investigators subject to suit under § 1983 for making materially false statements either knowingly or in reckless disregard for the truth to establish probable cause."); *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015) (at pleading stage, plaintiff's allegations "plausibly show that [defendant] is not entitled to qualified immunity" for material omissions in application for arrest warrant). Therefore, Stager's allegations plausibly describe a violation of a clearly-established constitutional right, meaning that the Court cannot apply qualified immunity at this stage.

Moreover, this conclusion applies equally to Hanshaw and Lawless. True, compared to Hanshaw, Lawless's role appears attenuated. But Defendants do not differentiate their qualified-immunity argument between the two. (*See* Doc. 13, #66–68). In any event, as noted above, the Incident Report attached to Defendants' Answer shows Lawless's direct involvement in the charging decision. (*See* Doc. 12-1, #39). Furthermore, Stager alleges that Lawless knew that Hanshaw falsified the criminal

---

[17] *See* Doc. 12-2, #40 (criminal complaint alleging Stager caused Hanshaw "to believe that [Stager] would cause serious physical harm to the person or property of [Hanshaw], in violation of Section 2903.21 of the Ohio Revised Code"). The statute under which Stager was charged provides that "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person." Ohio Rev. Code § 2903.21. The Court understands Stager to allege that Hanshaw lied about his belief that Stager would cause him serious physical harm.

complaint, thus specifically implicating Lawless in conduct which the Sixth Circuit has identified as incompatible with a qualified immunity defense.

Defendants point to Eleventh Circuit precedent which provides that "an officer is only required to have arguable probable cause" to be entitled to qualified immunity. (Doc. 13, #67) (citing *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997)). But the Court is unaware of any Sixth Circuit precedent similarly recognizing immunity for "arguable" probable cause. In any event, that proposition would seem to be of little use at the pleading stage. And, while Defendants emphasize Sixth Circuit precedent observing that qualified immunity "is a threshold question to be resolved at the earliest possible point," they conspicuously omit the end of the quotation: "that point is usually summary judgment and not dismissal under Rule 12." (Doc. 15, #85 (quoting *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015))). Such is the case here.[18]

## CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Judgment on the Pleadings (Doc. 13). Specifically, the Court **DISMISSES** Counts II, III, and IV of the Complaint as to all Defendants. Furthermore, the Court **DISMISSES** Count I as to all Defendants in their official capacities. The Court, however, allows Count I—the First Amendment retaliation claim—to proceed as asserted against Defendants Hanshaw and Lawless in their

---

[18] Given that the conclusions herein should simplify many of the remaining issues, the Court would entertain—indeed, welcome—prompt summary judgment briefing following the completion of whatever discovery remains necessary.

individual capacities. Given that there are no remaining claims against the Lawrence County Board of Commissioners, the Court **DIRECTS** the Clerk to **TERMINATE** the Board as a Defendant on the docket in this matter.

     **SO ORDERED.**

August 4. 2025
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**